IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN - 8 2009 ★

BROOKLYN OFFICE    ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                 Plaintiff,

    -against-

EMIL THOMPSON,

                Defendant.
-----------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 06-CV-6341(FB)(VVP)

*Appearances:*

*For the Plaintiff:*
LISA L. BELLAMY, ESQ.
U.S. Department of Justice Tax Division
Civil Trial Section, Northern Region
P.O. Box 55
Ben Franklin Station
Washington, DC 20044

*For the Defendant:*
DANIEL C. MAROTTA, ESQ.
Gabor & Marotta
1878 Victory Boulevard
Staten Island , NY 10314

**BLOCK, Senior District Judge:**

Before the Court are the Report and Recommendation ("R&R") of Magistrate

Judge Victor V. Pohorelsky and the objections thereto by the defendant, Emil Thompson

("Thompson"). For the reasons described below, the Court rejects Thompson's objections

and accepts the R&R in its entirety.

I

On or about September 11, 1995, a delegate of the Secretary of the Treasury

assessed a penalty of $82,383.20 against Thompson, as a statutorily "responsible person"

who willfully failed to collect, truthfully account for, or pay over the withholding taxes of

the employees of EJT Construction & Excavation Co. *See* 26 U.S.C. § 6672.

On February 24, 2004, the IRS received a compromise offer from Thompson

in the amount of $500. On December 15, 2004, the IRS mailed Thompson a letter stating

that his "offered amount of $500 cannot be recommended for acceptance[,]" inviting him

to increase or withdraw his offer, and advising him that he would "receive separate notification with [his] right to appeal" in the event his offer's ultimate rejection. Docket Entry #19, Ex. 2.[1] The complaint alleges that Thompson's offer-in-compromise "was pending" through May 14, 2005, *see* Compl. ¶ 3 & n.1; consistent with this allegation, internal IRS records state that Thompson's offer was "rejected" on May 14, 2005. *See* Pls'. Opp. to Request to Dismiss (Docket Entry #8), Ex. 1.

Subsequently, the IRS referred the assessed penalty and interest thereon to the Department of Justice for collection. On November 29, 2006, the United States brought a civil action to recover the unpaid penalty assessed against Thompson, plus interest and costs of litigation. As a result of Thompson's failure to answer or otherwise defend, a default judgment was entered on November 30, 2007, and the matter was referred to Magistrate Judge Pohorelsky for a determination of the relief to be awarded. *See* Docket Entry #21 (Memorandum and Order).

On November 21, 2008, the magistrate judge issued the R&R at issue, *see* Docket Entry #33, recommending that the United States be awarded: (1) $148,716.50, reflecting the initially assessed penalty plus interest accrued through February 12, 2008, reduced by $55,550.00 in proceeds from the forced sale of Thompson's real estate, which occurred on that date; (2) interest upon this amount, accruing pursuant to 26 U.S.C. § 6621, calculated from February 12, 2008 until payment is made; and (3) taxable costs of this action, as submitted by the United States to the Clerk of the Court within 30 days after

---

[1] This letter did not constitute an official rejection of the offer-in-compromise. *See* 26 C.F.R. § 301.7122-1(f) ("An offer to compromise has not been rejected until the IRS issues a written notice to the taxpayer or his representative, advising of the rejection, the reason(s) for the rejection, and the right to an appeal.").

entry of final judgment. The R&R advised that "[a]ny objections . . . must be filed with the Clerk of the Court . . . within ten (10) days of receipt . . . . Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court . . . ." R&R at 6-7 (citations omitted). Thompson timely filed objections to the R&R. *See* Docket Entry #34.

## II

"[A] district court evaluating a magistrate judge's recommendation is permitted to adopt those portions of the recommendation to which no specific, written objection is made, as long as those sections are not clearly erroneous." *Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997) (internal quotation marks and citations omitted).

By contrast, "[s]hould either party object to the magistrate's recommendation, . . . '[the district court] shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989) (quoting 28 U.S.C. § 636(b)(1)(B)). Even when exercising *de novo* review, however, "[t]he district court need not . . . specifically articulate its reasons for rejecting a party's objections . . . ." *Morris v. Local 804, Int'l. Bhd. of Teamsters*, 167 F. App'x 230, 232 (2d Cir. 2006). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions." *Grassia*, 892 F.2d at 19 (quoting 28 U.S.C. § 636(b)(1)).

## III

In his R&R, the magistrate judge performed a fairly straightforward mathematical calculation of damages, based on liquidated sums and dates alleged in the

3

complaint and the relevant interest rates imposed by statute. In his objections, Thompson does not take issue with the methodology of the R&R's damage calculations; rather, Thompson's principal objection is that the United States "failed to introduce any admissible evidence demonstrating that a rejection of [Thompson's offer-in-compromise] was in fact sent on May [14], 2005." Thompson Objection to R&R at 2. Thompson correctly notes that the United States "never provided [the Court with] a copy of the letter it claims was sent on May 14, 2005 rejecting the offer[,]" and claims that he never received any such letter. *Id.* at 4. Thompson points out that under applicable regulations, "any offer-in-compromise ... shall be deemed to be accepted ... if such offer is not rejected ... before the date which is 24 months after the date of the submission of such offer" – in this case, February 24, 2006. 26 U.S.C. § 7122(f). Consequently, he argues, his offer should be deemed accepted, and the United States's recovery should be limited to the proposed compromise sum of $500.

"It is, of course, ancient learning that a default judgment deems all the well-pleaded allegations in the pleadings to be admitted[,]" *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997), except as to damage amounts that, unlike those in this case, are not liquidated or susceptible of mathematical computation. *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974); *see also Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). The United States's complaint alleges that Thompson's offer-in-compromise was pending "through May 14, 2005" – i.e., that the offer ceased to be pending on that date. Compl. ¶ 3 n.1. This is logically equivalent to an allegation that the offer was *duly rejected* on that date. Because of Thompson's default, this factual allegation is deemed admitted; he cannot belatedly contest it in response to the magistrate judge's calculation of damages.

4

While this is a sufficient ground to deny Thompson's objection, the record also contains documentary evidence supporting the United States's allegation that Thompson's offer was in fact rejected – namely, the United States has submitted a printout of Thompson's IRS case history, which states that Thompson's offer was "rejected" on May 14, 2005. *See* Docket Entry 8, Ex. 1. While Thompson faults the United States for failing to submit the rejection letter *itself*, the business record submitted by the IRS is clearly sufficient circumstantial evidence from which to conclude that such a letter was sent on the date indicated therein.

Finally, Thompson's belated allegation that he never actually *received* the IRS's rejection letter is entirely immaterial, as "[r]ejection [of an offer-in-compromise] is effective as of the date on the rejection letter[,]" *not* as of the date it is received. Rev. Proc. 2003-71 § 9.01, 2003 WL 21982210 (I.R.S. Aug. 21, 2003); *see also* Notice 2006-68, 2006 WL 1891573 (I.R.S. July 11, 2006) ("The date an offer is rejected . . . is the date *on which the Service issues* a written notice of rejection . . . .") (emphasis added).[2]

## CONCLUSION

Thompson's objections are denied, and the Court adopts the R&R in its entirety. Accordingly, the Court holds Thompson liable for the combined sum of

---

[2] Generously construed, Thompson's objections also appear to take issue with the consistency of two affidavits submitted by the United States. One states that *accrued interest* as of *November 29, 2006* was $103,215.47. *See* Aff. of Kim E. Randle (Docket Entry #6) ¶ 4. The other states that after the application of the $55,550.00 in proceeds from the forced sale of Thompson's property on *February 12, 2008*, his *total* outstanding liability (including principal and interest) was $148,716.50. *See* Aff. of Marlene Sudano (Docket Entry #33) ¶ 4. These two affidavits are not "based upon the same dates," as Thompson claims they are, Thompson Objection to R&R at 5; nor are they even calculations of the same quantity. That these numbers diverge, therefore, is entirely unremarkable.

(1) $148,716.50; (2) interest upon this amount, accruing pursuant to 26 U.S.C. § 6621, calculated from February 12, 2008 until the date of payment;[3] and (3) taxable costs of this action, as submitted by the United States to the Clerk of the Court within 30 days after entry of final judgment, in accordance with Local Civil Rule 54.1 and 28 U.S.C. §§ 1920 and 1924.

SO ORDERED.

s/ FB
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
January 7, 2009

---

[3] The rate of interest on a penalty imposed pursuant to 26 U.S.C. § 6672 is the sum of "the Federal short-term rate . . . plus . . . 3 percentage points . . . ." 26 U.S.C. § 6621(a)(2); *see also* 28 U.S.C. § 1961(c)(1). The Federal short-term rate is determined by the Secretary of the Treasury for each calendar quarter, *see* 26 U.S.C. § 6621(b); 26 U.S.C. § 1274(d); it is "published by the Commissioner in a Revenue Ruling" and "accrues at the prescribed rate per annum compounded daily." 26 C.F.R. 301.6621-1; *see also* 26 C.F.R. 301-6622-1.